IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNDAY IYOHA<br>14205 Water Fowl Way<br>Upper Marlboro, MD. 20774<br>                              **Plaintiff**<br><br>                v.<br><br>THE ARCHITECT OF THE CAPITOL<br>c/o General Counsel<br>Ford House Office Building H2-265A<br>Second and D Streets SW<br>Washington, DC 20515<br>                              **Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)    **JURY DEMAND INCLUDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiff brings suit against the Architect of the Capitol because he was passed over, a third time, for promotion to the Branch Chief of the Production Management Branch.

Plaintiff is black and of Nigerian descent, who speaks with an obvious Nigerian accent. In October 2012, the AOC's Chief Information Officer, Jay Wiegmann, and Deputy Director of the IT Division, Angela Clark, discriminated against because of his national origin by removing him from his Help Desk Manager position, because they wanted the IT Help Desk to be staffed and managed by people who spoke with American accents. Plaintiff prevailed against the Defendant in litigation at the Office of Compliance in that case.

In August 2014, the AOC's Chief Information Officer, Jay Wiegmann, and Deputy Director of the IT Division, Angela Clark, denied him a selection to a GS-14 Production Management Branch Chief position. The same position came open the following year and was re-posted in September 2015, but Clark and Wiegmann again rejected Mr. Iyoha for that post. Those two nonselections are the subject of Civil Action No. 1:15-cv-00324-RBW and D.C. Circuit

Appeal No. 17-5252.  In case no. 15-324, the District Court granted summary judgment on Plaintiff's discrimination and retaliation claims, but that decision was reversed in part in Appeal No. 17-5252, consequently Mr. Iyoha's national origin discrimination survives.

In 2019, the Branch Chief position became vacant again.  Mr. Iyoha applied, was considered qualified, and was interviewed for the position again.  This time, on information and belief, Mr. Iyoha was the highest scoring candidate in the interview process. Nevertheless, Mr. Iyoha was not selected.  During a post-selection meeting with James O'Keefe, the Acting Chief Administrative Officer of the Architect of the Capitol, Mr. O'Keefe told Mr. Iyoha that he had not been selected for the position because Mr. Iyoha's "heart was not into it."  The true reason was because of discrimination based on Mr. Iyoha's national origin and retaliation for his past protected activity.

## JURISDICTION

1. Plaintiff invokes the jurisdiction of this Court pursuant to the Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2. This is an action authorized and instituted pursuant to the Congressional Accountability Act, (2 U.S.C. § 1301 *et seq*.).

3. The unlawful employment practices alleged in this Complaint were committed in the District of Columbia.

4. Plaintiff is a current employee of Architect of the Capitol.

5. The Defendant Architect of the Capitol (AOC) is a United States Congressional Agency located in the District of Columbia.

6. The Congressional Accountability Act makes it unlawful for the Architect of the

      Capitol to discriminate against employees based on, *inter alia*, their race and national origin. The Act also makes it unlawful for the AOC to "intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by [the] Act."

7. Plaintiff has satisfied all administrative and judicial prerequisites to the institution of this action. Plaintiff learned that he had not been selected for the Branch Chief position on April 5. 2019. On April 12, 2019, Mr. Iyoha filed a timely Request for Counseling before the Office of Compliance raising the nonselection and stating that he had been denied the promotion because of national origin discrimination and reprisal. Plaintiff received notice of the end of the Counseling Period on May 21, 2019. Mr. Iyoha timely filed a timely Request for Mediation on May 28, 2019, within 15 days of receipt of the Notice of the End of Counseling. Plaintiff participated in mediation on June 19, 2019, and the end of the mediation period fell on July 5, 2019. Plaintiff files this suit within the time limits defined by the Act (i.e. after the expiration of 30 days from the end of the Mediation Period, and before the expiration of 90-days, following the receipt of the notices of the termination of the Mediation Period).

## FACTS

8. Prior to October 5, 2012, Plaintiff was the Information Technology Help Desk Manager for the Architect of the Capitol.

9. Plaintiff's performance as Help Desk Manager was very good. Under the former CIO, who left that position in June 2011, Mr. Iyoha earned Outstanding performance evaluations in 2009 and 2010, and he received monetary and other recognition.

10. Jay Wiegmann, who is white and of American Origin, became the new Chief Information Officer in June 2011.

11. After he took the CIO position, Wiegmann made statements and comments that he was annoyed by the fact that the help desk operators did not speak with clear American accents and that he wanted to ensure that help desk personnel spoke with American accents.

12. Shortly after Wiegmann took over as CIO, he stopped taking in-person briefings from Mr. Iyoha.

13. Mr. Wiegmann has made comments to other ITD staff that he could not understand Mr. Iyoha's accent (even though Mr. Iyoha speaks English very clearly), and that he preferred it when Mr. Iyoha emailed him because he found it difficult to understand Mr. Iyoha otherwise.

14. A June 2011 survey that the AOC conducted revealed that a large number of respondents had positive interactions with the IT Division and that the Help Desk was seen as the primary or sole strength of the IT Division.

15. Despite the commendable performance of the Help Desk under Mr. Iyoha's leadership, in February 2012, Mr. Iyoha's rating was downgraded to "Fully Successful" for his 2011 performance.

16. The Defendant's Equal Employment Opportunity and Diversity Programs office investigated Mr. Wiegmann in 2012, as a result of his discriminatory comments, but not corrective action was taken. In fact, even though several witnesses stated that Mr. Wiegmann had made offensive comments that were indicative of discrimination, the EEO office concluded that there was no evidence of discrimination.

17. On October 5, 2012, Wiegmann and Angela Clark (black, American origin) (then Deputy Director of the IT Division) reorganized the Help Desk and other IT support functions (including telephone and software) so that it fell under the purview of the "Virtual Customer Service Team" (VCST), which was led by Paul Scheff (White, American origin).

18. After the reorganization, all of the Help Desk personnel associated with the VCST spoke with an American accent.

19. Mr. Wiegmann made discriminatory comments about ITD employees and/or contractors who spoke with an accent. When the Chief Enterprise Architect told him that his comments were discriminatory, Mr. Wiegmann replied: "So sue me. We can't have people like that as our first-line communicators."

20. Ms. Clark shared Mr. Wiegmann's opinions about employees who spoke with accents being on the Help Desk.

21. Following the October 2012 reorganization of the Help Desk, Wiegmann and Clark reassigned Mr. Iyoha's first line supervisor, who was Persian and spoke with a Persian accent away from his position and to an inventory management position at the Capitol Visitor's Center.

22. Wiegmann and Clark transferred Plaintiff to a Project Manager position in Service Delivery Branch, which is a GS 13 position with no promotion potential. In this position, Mr. Iyoha acts as liaison between the AOC and contractors working on Life Safety, Fire and Environmental Protection projects.

23. Plaintiff challenged his reassignment in an action at the Office of Compliance. He filed a complaint at the Office of Compliance in February 2013.

24. On June 7, 2013, following an evidentiary hearing, the Hearing Officer ruled that the AOC discriminated against Mr. Iyoha based on his National Origin when it transferred him away from the Help Desk Manager position.

25. The Hearing Officer concluded that both Wiegmann and Clark had offered false performance-based justifications for removing Mr. Iyoha from the Help Desk Manager position as a pretext for national origin discrimination.

26. On July 30, 2014, in response to the AOC's petition for review, the Board of the Office of Compliance affirmed the Hearing Officer's finding of National Origin discrimination and confirming Plaintiff's damages and attorney's fee awards.

27. Even after he was found to have discriminated against Plaintiff, the Architect gave Wiegmann a Leadership award. Likewise, Angela Clark was promoted to the position of Deputy Chief Information Officer / Deputy Director and on information and belief, she was promoted to GS 15.

28. In April 2014, the AOC posted a vacancy announcement for a position entitled "Product Management Branch Chief."

29. The position was a GS-14 position, which would have been a promotion for Mr. Iyoha.

30. The primary duties for this position included, among other things, maintaining the help desk, as well as monitoring and supervising the production environment, which includes server and network administration.

31. Plaintiff had performed the duties of the Production Management Branch Chief on several occasions in an "Acting" capacity.

32. Plaintiff applied for the position, and he was rated qualified and interviewed for the position.

33. Angela Clark told Mr. Wiegmann at the time that she would not have selected Iyoha for an interview based on his resume, that she did so because of an agency hiring policy that required her to interview all internal candidates when fewer than five apply.

34. Shortly before the 2014 selection, Mr. Wiegmann made fun of Mr. Iyoha's accent by testing out his iPhone's "Siri" on Mr. Iyoha and repeatedly declaring his surprise that Siri could understand Mr. Iyoha.

35. Plaintiff sat for an interview for the position in June 2014.

36. Jay Wiegmann and Angela Clark were on the interview panel for the selection; along with them were two other panelists, who did not work in the Information Technology field.

37. Mr. Wiegmann and Ms. Clark manipulated that selection by, among other things, avoiding questions that pertained to Help Desk and Inventory management, duties that were integral to the Branch Chief position and which Mr. Iyoha had successfully performed prior to the reorganization. Additionally, Clark and Wiegmann told the other panelists (who did not have IT backgrounds) that Mr. Iyoha's interview responses were bologna answers.

38. Mr. Iyoha was notified that he was not selected for the position on September 23, 2014. A candidate who did not speak with a Nigerian accent was selected instead.

39. That selectee was terminated after only 10 months, as a result of lacking qualifications and experience that were obvious from the time that he interviewed for the position.

40. In September 2015, the AOC posted a vacancy announcement to re-fill the Product Management Branch Chief position (Vacancy Announcement No. ITD-2015-286).

41. In a change to the AOC's past practices, the AOC required applicants to include a copy

of their college transcripts or diplomas with their application, which added an additional burden (financial as well as logistical) on graduates from foreign universities, such as Plaintiff and others whose national origin is not American.

42. Plaintiff applied for the position, and he was rated qualified for the position.

43. Plaintiff sat for an interview for the position in November 2015.

44. Angela Clark was on the interview panel for the selection, and Jay Wiegmann was responsible for approving the selection.

45. Again, Ms. Clark avoided questions that focused on Help Desk and Inventory management, which hurt Mr. Iyoha because he had strong experience in those responsibilities.

46. Ms. Clark chose one panelist who had made negative comments about Mr. Iyoha's accent in the past and who had been on the first selection panel that rejected Mr. Iyoha and another panelist who had no IT background, and who could be influenced into believing that Mr. Iyoha's answers during the interview were not good.  That left Ms. Clark, who had discriminated against Mr. Iyoha in the past (the reorganization and the first nonselection) and one other panelist, who was aware that Mr. Wiegmann and Ms. Clark did not want to have Mr. Iyoha in the Branch Chief position because of their views about IT employees who spoke with a strong accent.

47. As a result, Mr. Iyoha did not score well during the interviews and was not selected.

48. When it appeared that a candidate who spoke with a Hispanic accent might be selected for the Branch Chief position, Clark adopted a second round of interview, in which she and Mr. Wiegmann, along with their supervisor, David Ferguson (then the CAO), participated.  The Hispanic candidate was eliminated in the second round and a White

man who does not speak with a foreign accent was selected.

49. Mr. Iyoha filed complaints at the Office of Compliance based on the first two non-selections, and he filed suit (case no. 15-324) to challenge those nonselections.

50. The litigation of the civil action and the appeal to the D.C. Circuit was active and ongoing between March 4. 2015 and the present date.

51. Although the District Court granted summary judgment on Plaintiff's discrimination and retaliation claims, that decision was reversed in part, on July 2, 2019, in Appeal No. 17-5252, consequently Mr. Iyoha's national origin discrimination survives.

52. The same Branch Chief position became vacant again in early 2019.

53. Mr. Iyoha applied, was deemed qualified and was interviewed for the position.

54. Although Mr. Iyoha was, on information and belief, the highest scoring candidate from the interviews he was not selected.

55. Mr. Iyoha learned that he was not selected on April 5, 2019.

56. An American woman, with no foreign accent, and who had never engaged in protected activity was selected instead of Mr. Iyoha.

57. Mr. Iyoha had a post-selection briefing with Jim O'Keefe, the Acting Chief Administrative Officer of the Architect of the Capitol.

## COUNT I: DISCRIMINATION AND RETALIATION

58. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

59. The Architect of the Capitol violated the Congressional Accountability Act when it denied Plaintiff the GS-14 Production Management Branch Chief position because of Mr. Iyoha's national origin.

60. In addition, or in the alternative, the Architect of the Capitol violated the Congressional Accountability Act when it denied Plaintiff the GS-14 Production Management Branch Chief position in retaliation for his protected activity, namely his past complaints at the Office of Compliance and his civil action and appeal against the Architect (Civil Action No. 1:15-cv-00324-RBW and D.C. Circuit Appeal No. 17-5252).

61. As a result of the AOC's unlawful conduct, Plaintiff has suffered substantial economic damages, in the form of lost income.

62. As a result of the AOC's unlawful conduct, Plaintiff has suffered emotional pain and suffering, stress, fear, embarrassment, humiliation, inconvenience and feelings of depression and anxiety.

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the Defendant to make the Plaintiff whole by paying him any monetary damages proved at trial in addition to compensatory damages in an amount to be determined at trial; (iv) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (v) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (vi) grant such other and further relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        Respectfully Submitted,
        ALDERMAN, DEVORSETZ & HORA, PLLC

        Leslie D. Alderman III (D.C. # 477750)
        1025 Connecticut Ave., NW
        Suite 615
        Washington, DC 20036
        Tel: 202-969-8220
        Fax: 202-969-8224
        lalderman@adhlawfirm.com
        Attorney for the Plaintiff